**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARVIN ANTONIO SAGASTUME-GALICIA,<br><br>                       Defendant. | Criminal Action No. 20-40 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the government's motion for review of a Magistrate Judge's order releasing the defendant, Marvin Antonio Sagastume-Galicia, who has been charged with one count of reentry of an alien removed from the United States following conviction for three or more misdemeanors involving violence against persons, in violation of 8 U.S.C. § 1326(a), (b)(1). Crim. Compl. at 1, ECF No. 1.[1] Based on the parties' briefing and evidence proffered at a hearing held telephonically on April 21, 2020, the government's motion for review was granted, and the Magistrate Judge's order releasing the defendant was reversed.[2]

This memorandum opinion sets out the findings and reasons for this Court's determination that the defendant must be detained pending trial. *See* 18 U.S.C. § 3142(i)(1) (requiring that a detention order "include written findings of fact and a written statement of the reasons for the detention"); *United States v. Nwokoro*, 651 F.3d 108, 112 (D.C. Cir. 2011) (remanding to the district court for a preparation of "findings of fact and a statement of reasons

---

[1]     The criminal complaint charging defendant and the warrant for his arrest incorrectly list the defendant's name as Marvin Antonio Sagastume-Garcia. The government has clarified that defendant's surname is in fact Sagastume-Galicia. Gov't Mem. Supp. Pre-Trial Detention at 1 n.2, ECF No. 4.
[2]     The Chief Judge is empowered to hear "[r]equests for review of an order by a magistrate judge in a criminal matter not assigned to a district judge." LCrR 59.3.

1

in support of [defendant's] pretrial detention" when a transcription of the detention hearing was insufficient).

## I.   BACKGROUND

On November 21, 2019, the government filed a one-count criminal complaint against defendant, charging him with illegally reentering the United States following conviction for three or more misdemeanors involving violence against persons, in violation of 8 U.S.C. § 1326(a) and (b)(1).  An arrest warrant was issued the following day by a Magistrate Judge.  Arrest Warrant, ECF No. 3.  Following defendant's arrest on April 16, 2020, he made his initial appearance in this Court the next day, on Friday, April 17, 2020.  Min. Entry (Apr. 17, 2020).  During that appearance, the government made an oral motion for a detention hearing pursuant to 18 U.S.C. § 3142(f)(2)(A).  Gov't Supp. Mem. in Support of Pretrial Detention ("Gov't Supp. Mem.") at 2, ECF No. 6.  That motion was denied when the Magistrate Judge found the government had not met its threshold burden of showing that defendant was a serious flight risk.  *Id*.  Consequently, the Magistrate Judge released defendant on personal recognizance subject to certain standard conditions of release.  Rough Transcript of Hearing Before Magistrate Judge (Apr. 17, 2020) ("MJ Hr'g Tr. (Rough)") at 17.

The government promptly moved to stay and appeal the Magistrate Judge's order by e-mail with the Court's leave.  Gov't Supp. Mem., Ex. A ("Gov't Mot."), ECF No. 6-1.  This Court stayed the Magistrate Judge's order of release, Order (Apr. 17, 2020), ECF No. 5, and scheduled a hearing for the following Monday, April 20, 2020.  Owing to the current nationwide emergency caused by the COVID-19 pandemic, the hearing was to take place telephonically with defendant proceeding by video teleconference.  Technical difficulties, however, meant that the defendant was unable to participate by videoconference, and defense counsel waived his

presence. Rough Transcript of Hearing (Apr. 20, 2020) ("Hr'g Tr. (Rough)") at 8. The hearing thus proceeded with counsel for defendant and the government appearing telephonically.

**II.    LEGAL STANDARDS**

A magistrate judge's order for release is reviewed *de novo*, and a district judge conducting that review must "promptly," 18 U.S.C. § 3145(a), make an independent determination whether conditions of release exist that will reasonably assure the defendant's appearance in court or the safety of any other person or the community, pursuant to 18 U.S.C. § 3142. *See* 28 U.S.C. § 636(a)(2) (authorizing magistrate judges to "issue orders pursuant to section 3142 of title 18 concerning release or detention of persons pending trial"); 18 U.S.C. § 3145(a) ("If a person is ordered released by a magistrate judge . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order."); *see also United States v. Henry*, 280 F. Supp. 3d 125, 128 (D.D.C. 2017) ("The Court reviews *de novo* whether there are conditions of release that will reasonably assure the safety of any other person and the community."); *United States v. Hunt*, 240 F. Supp. 3d 128, 132–33 (D.D.C. 2017) (noting that "although the D.C. Circuit has not yet addressed the issue, the many circuits that have agree[d] that the district judge should review *de novo* a detention decision rendered by a Magistrate Judge" and collecting cases). "The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *United States v. Hubbard*, 962 F. Supp. 2d 212, 215 (D.D.C. 2013) (quoting *United States v. Sheffield*, 799 F. Supp. 2d 18, 19–20 (D.D.C. 2011)).

### III.     DISCUSSION AND FINDINGS

The Bail Reform Act requires release of a defendant prior to trial unless a judicial officer determines, after a hearing, that "no condition or combination of conditions will reasonably assure the appearance of the person[.]" 18 U.S.C. § 3142(e)(1). In a "case that involves . . . a serious risk that [the defendant] will flee", the court "shall hold a hearing" upon a motion from an attorney for the government. *Id.* § 3142(f)(2)(A). "A determination that an individual is a flight risk must be supported by a preponderance of the evidence." *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019) (citing *United States v. Vortis*, 785 F.2d 327, 328–29 (D.C. Cir. 1986) (per curiam)). The "preponderance must . . . go to the ultimate issue: [whether] no combination of conditions . . . can 'reasonably' assure that the defendant will appear for trial." *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). In determining whether the government has met that burden, the court must "take into account the available information concerning" four factors set out in 18 U.S.C. § 3142(g). These factors are: "(1) the nature and circumstances of the offense charged, . . .; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . .; (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

At the hearing in this matter, defense counsel argued that the government failed to "establish that there [are] grounds for a detention hearing," Hr'g Tr. (Rough) at 13, an apparent reference to the Magistrate Judge's determination that the government had not, as required by 18

U.S.C. § 3142(f)(2)(A), shown that this case involved a "serious risk of flight." MJ Hr'g Tr. (Rough) at 11. That ruling, however, was in error. The government has proffered that defendant, who is a citizen of Guatemala and illegally present in the United States, was subject to a removal order in 2009 and was indeed removed from Houston, Texas in August, 2009, after his convictions earlier that same year of three sex abuse misdemeanors, in violation of D.C. Code § 22-3006. Gov't Supp. Mem. at 5; *see also* Pretrial Services Report ("PTS Rep.") at 3, ECF No. 2. His reentry thus evinces an inability to conform his conduct to court orders and instills little confidence that he would not seek to evade orders from this Court to appear. That conclusion is further supported by the significant penalties defendant faces as a result of pending charges in both this case and in Superior Court, where he has been charged with Assault with a Dangerous Weapon and Assault with Significant Bodily Injury, in case number 2020 CF3 004126. PTS Rep. at 3. Not only does the charged offense in the case before this Court carry with it the possibility of 10 years' imprisonment, 8 U.S.C. § 1326(b)(1), so, too, does one of the charges pending in Superior Court. Gov't Mem. Supp. Pre-Trial Detention ("Gov't Mem.") at 5, 7, ECF No. 4. In addition, owing to his undocumented status, defendant also faces the prospect of deportation. This confluence of circumstances is more than enough to establish that this case presents a serious risk of flight justifying a detention hearing.

Having so found, this Court proceeded to hold a detention hearing and elicited information necessary to determine whether "no condition or combination of conditions will reasonably assure the appearance of the" defendant. 18 U.S.C. § 3142(e)(1). The factors that must be considered in making that determination, and the findings that underpin each one, are discussed *seriatim*.

U.S.C. § 3142(f)(2)(A), shown that this case involved a "serious risk of flight." MJ Hr'g Tr. (Rough) at 11. That ruling, however, was in error. The government has proffered that defendant, who is a citizen of Guatemala and illegally present in the United States, was subject to a removal order in 2009 and was indeed removed from Houston, Texas in August, 2009, after his convictions earlier that same year of three sex abuse misdemeanors, in violation of D.C. Code § 22-3006. Gov't Supp. Mem. at 5; *see also* Pretrial Services Report ("PTS Rep.") at 3, ECF No. 2. His reentry thus evinces an inability to conform his conduct to court orders and instills little confidence that he would not seek to evade orders from this Court to appear. That conclusion is further supported by the significant penalties defendant faces as a result of pending charges in both this case and in Superior Court, where he has been charged with Assault with a Dangerous Weapon and Assault with Significant Bodily Injury, in case number 2020 CF3 004126. PTS Rep. at 3. Not only does the charged offense in the case before this Court carry with it the possibility of 10 years' imprisonment, 8 U.S.C. § 1326(b)(1), so, too, does one of the charges pending in Superior Court. Gov't Mem. Supp. Pre-Trial Detention ("Gov't Mem.") at 5, 7, ECF No. 4. In addition, owing to his undocumented status, defendant also faces the prospect of deportation. This confluence of circumstances is more than enough to establish that this case presents a serious risk of flight justifying a detention hearing.

Having so found, this Court proceeded to hold a detention hearing and elicited information necessary to determine whether "no condition or combination of conditions will reasonably assure the appearance of the" defendant. 18 U.S.C. § 3142(e)(1). The factors that must be considered in making that determination, and the findings that underpin each one, are discussed *seriatim*.

  **1.**  *The Nature and Circumstances of the Offense*

  As noted above, the defendant has been charged with a single count of illegal reentry, in violation of 8 U.S.C. § 1326(a).  The nature of this offense favors detention for at least three reasons.  First, defendant's return to the United States following his 2009 court-ordered removal is strong evidence that he will be unable to abide by court-ordered release conditions.  Second, defendant's undocumented status means that his crime exposes him to deportation.  Given the defendant's presence in the United States after being removed, he has already shown a willingness to break the law in order to remain here and suggests a strong intent to avoid the consequences of deportation.  That potential sanction doubtless provides a large incentive to flee in order to avoid detection by immigration authorities.  Third, the circumstances of this particular offense similarly show why detention is favored.  In ordinary circumstances, the charge defendant faces carries a maximum penalty of 2 years' imprisonment.  *Id*.  The government avers, however, that the defendant was previously convicted of three misdemeanors involving "crimes against the person," which criminal history increases the maximum term of imprisonment to 10 years.  Gov't Mem. at 5; *see also* 8 U.S.C. § 1326(b)(1).  Specifically, the government states that a "criminal record check and review of the defendant's alien file revealed that on or about February 19, 2009, the defendant was convicted in the Superior Court of the District of Columbia of three counts of Misdemeanor Sexual Abuse."  Gov't Mem. at 4.

  Although the defendant is statutorily exposed to 10 years' imprisonment, the parties are in accord that the sentencing guidelines recommend a sentence of a year or less of imprisonment and leave open the possibility of a probationary sentence.  Gov't Supp. Mem. at 9; Def.'s

Response to Gov't's Objection to Pretrial Release ("Def.'s Opp'n") at 2 n.1, ECF No. 8.[3]

Nevertheless, defendant stands accused of a crime, an essential element of which is the failure to comply with a court order. Moreover, although the guidelines may suggest a lower penalty, Congress emphasized the seriousness of this alleged offense by attaching a possible 10-year sentence. This factor thus weighs in favor of detention.

### 2. *The Weight of the Evidence Against the Defendant*

The weight of the evidence in this case also favors detention. The government avers that defendant's 2009 removal from the united states is recorded on a "[w]arrant of [r]emoval" that includes his photograph, his fingerprints, and his signature. Gov't Mem. at 5. As described above, the government was also able to conduct a criminal record check that turned up a record of defendant's three convictions for misdemeanor sexual abuse in Superior Court. Gov't Mem. at 4. The evidence necessary to prove the elements of the alleged offense is minimal and the government avers that it has it. A strong government case only heightens defendant's incentive to flee. The second factor therefore also favors detention.

### 3. *The History and Characteristics of the Defendant*

Defendant, who is from Guatemala, is undocumented. PTS Rep. at 1. In 2009, he pled guilty to three counts of misdemeanor sexual abuse in Superior Court. *Id*. at 3. In doing so, he admitted to groping several women who were strangers to him. Gov't Mem. at 7; *see also* Hr'g Tr. (Rough) at 27. Although those are the only convictions on defendant's record, they are not his only encounter with law enforcement, with two arrests in 2019 and an additional arrest recently resulting in pending charges in D.C. Superior Court. Specifically, in April 2019,

---

[3] The government estimates that the applicable guideline, U.S.S.G. § 2L1.2, produces a sentencing range of between six and twelve months, while the defendant suggests zero to six months is the proper range. Hr'g Tr. (Rough) at 32.

defendant was arrested by the United States Park Police for misdemeanor lewd, indecent, or obscene acts and misdemeanor unlawful entry. Gov't Mem. at 3. Those charges were ultimately dismissed. MJ Hr'g Tr. (Rough) at 9. In October 2019, defendant was again arrested by United States Park Police for misdemeanor possession of a controlled substance. Gov't Mem. at 3.

The circumstances leading to defendant's most recent arrest are, however, most troubling. Defendant was arrested on April 15, 2020 and charged with assault with a dangerous weapon and assault with significant bodily injury. He is accused of cutting another individual with a knife on his chest and neck. Gov't Mem. at 6–7. The alleged victim required stitches. *Id*. at 7. Defendant has challenged the veracity of the alleged victim of the knife attack who is also apparently the sole witness. Hr'g Tr. (Rough) at 16–17. The facts underlying that charge are not a model of clarity, *id*. at 19 (government conceding that the document from which its proffer is drawn "is not a clearly written document"), but it must be noted that a Superior Court Judge did find probable cause existed to believe that defendant had committed this serious and violent crime. *Id.* at 20.

Defendant's citizenship status must also be taken into account. The record suggests he has no legal status in the United States. In fact, Immigration, Customs and Enforcement ("ICE") has lodged an immigration detainer, akin to a warrant, against defendant. *Id*. at 23. While this fact alone cannot justify pretrial detention, *see, e.g., Xulam*, 84 F.3d at 444; *Vasquez-Benitez*, 919 F.3d at 551, it certainly must be weighed in balancing the section 3142(g) factors. Clearly when a defendant has strong community ties, his undocumented status may provide little justification for believing him to be a flight risk. *See Vasquez-Benitez*, 919 F.3d at 551 (noting that, in part because defendant "ha[d] a wife, two children and a job as a dishwasher in the D.C. area" for a long time period, the third factor likely favored release); *Xulam*, 84 F.3d at 442 (same for

defendant who "was employed and had a wide circle of respected acquaintances and close friends in the community").  Other factors might also incentivize an undocumented defendant to stay in the District despite substantial risk of deportation.  *See Vasquez-Benitez*, 919 F.3d at 551 (explaining defendant was attempting to "obtain withholding of removal" in already-begun immigration proceedings, which required following District Court's orders "in order to convince an immigration judge that he is credible"); *Xulam*, 84 F.3d at 443 (noting that the defendant had a "strong commitment to advocating his Kurdish cause in the United States," which could be "pursue[d]" only "publicly" and his flight "would render him permanently impotent in that respect").  Defendant in this case, however, has not proffered any such strong community ties or other external reason to stay in compliance with any conditions set on his pretrial release.  *See* Hr'g Tr. (Rough) at 14.  Defendant has at least one relative in the District of Columbia, *id.*, but is not currently employed.  *Id*. at 21–22.  Combined with defendant's history of physical violence and his inability to conform his conduct to court-ordered removal, his undocumented status and the existence of the detainer tip this factor in favor of detention.

### 4. *The Nature and Seriousness of the Danger Posed by Defendant's Release*

Although the government seeks detention based only on defendant's risk of flight, Hr'g Tr. (Rough) at 11, it asserts that this fourth factor also weighs in favor of detention.  Defendant's admitted conduct, groping several women in 2009, and his more recent alleged conduct involving cutting another individual twice with a knife, tends to show that the government is right.  This fourth and final factor also weighs in favor of detention.

### 5.     *Effect of the Current Pandemic*

The Court is well aware that COVID-19, currently the cause of a worldwide pandemic and national emergency,[4] is spreading in the D.C. Jail.  *See Banks v. Booth*, Civ. Action No. 20-849 (CKK), 2020 WL 1914896, at *9 (D.D.C. Apr. 19, 2020).  Although the threat of a pandemic does not fit neatly into one of the factors courts must consider under section 3142(g), the dangers of the virus give the Court pause about sending yet another person to the D.C. Jail and must be taken into account.  Nevertheless, given the paucity of information produced about defendant's ties to the community, *see* Hr'g Tr. (Rough) at 20–22, where defendant would be able to go or be found were he released is highly unclear.  More importantly, the conditions of the detention facilities in this District are currently the subject of a temporary restraining order issued by another Judge in this Court.  *See Banks*, 2020 WL 1914896 at *15.  The Court has confidence that the D.C. Department of Corrections, which oversees those facilities, will do everything it can to comply with that order so as to prevent the further spread of the virus to its residents and staff.

\*\*\*

Upon consideration of the proffered evidence presented at the hearing in this matter, the factors set forth in 18 U.S.C. § 3142(g), and the possible release conditions set forth in § 3142(c), the Court finds that the four statutory factors favor pretrial detention and that the defendant represents a serious risk of flight.  Thus, the government has met its burden to show, by a preponderance of the evidence, that "no condition or combination of conditions will reasonably assure the appearance of the" defendant.  18 U.S.C. § 3142(e)(1); *Vasquez-Benitez*,

---

[4]     *See Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, OFFICE OF THE PRESIDENT OF THE UNITED STATES, https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (last visited April 22, 2020).

919 F.3d at 551. Accordingly, the government's motion for review and appeal of the release order is granted and the defendant shall remain in the custody of the Attorney General for confinement pending a final disposition in this case. *See* 18 U.S.C. § 3142(i).

## IV. ORDER

Upon consideration of the Complaint, ECF No. 1, the government's Motion for Review and Appeal of Release Order, the evidence proffered and arguments presented in connection with the government's motion at the detention hearing held on March 3, 2020, the entire record, and the factors enumerated in 18 U.S.C. § 3142(g), based upon the written findings of fact and statement of reasons set forth in this Memorandum Opinion, it is hereby

**ORDERED** that the government's Motion for Review of the Magistrate Judge's Release Order is GRANTED and that Order is REVERSED; it is further

**ORDERED** that the government's Motion for Pretrial Detention is GRANTED; and it is further

**ORDERED** that the defendant, Marvin Antonio Sagastume-Galicia, be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; and it is further

**ORDERED** that the defendant be afforded reasonable opportunity for private consultation with counsel; and it is further

**ORDERED** that, on order of this Court or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined shall deliver the defendant to the U.S. Marshal for the District of Columbia for the purpose of an appearance in connection with a court proceeding.

**SO ORDERED.**

Date: April 22, 2020

_____
BERYL A. HOWELL
Chief Judge